We'll move to our fourth argument of the morning. Okay, it's in Appeal No. 23-14-15, Gelab Cosmetics v. Zhuhai Aobo Cosmetics. Ms. Yu, good morning. Good morning, Your Honors. May it please the Court, this is Tianyu Zhu appearing on behalf of Appellant Gelab Cosmetics LLC. This case involves Gelab Cosmetics LLC, a U.S. company, suing six Chinese defendants, three individual defendants, three corporate defendants, for trade secret misappropriation. Ms. Zhu, before we go too far down the road, can you tell me, please, the status of the New Jersey litigation and whether or not any of the issues have been resolved there? The discovery has been extended. No discovery has been done yet. This is the status of the New Jersey litigation. No discovery has been done yet? Exactly, Your Honor. At the heart of this case is the misappropriation of Gelab's trade secret, a violation that undermines the very foundation of fair competition and innovation. But is that the heart of the case, or is the heart of the case a prior question, whether Gelab itself owns these trade secrets? Because it's not stealing them from itself, if it does. It seems to me this is one of those that if the result in the New Jersey case goes in one direction, this is a very easy case, and that's all. There's really nothing left to it. If it goes in the other direction, if the understanding of corporate ownership is as you suggest it is, then there's going to be more work to do. But the central position of the New Jersey litigation I think is hard to dispute. Your Honor, from my understanding, even if one of the defendants outlawed, would be the 80% owner and the controlling ownership of Gelab Cosmetics LLC, it doesn't mean that those defendants outlawed and the other conspiracy defendants in this case did not steal any trade secret from Gelab. Explain what you mean. And wouldn't it control if they own 80% of Gelab, then wouldn't they be the ones controlling whether or not to bring this lawsuit in the first instance? There might still be trade secret issues, but if it's Gelab that's claiming the trade secrets and they own 80% of Gelab, they get to determine whether or not to bring the lawsuit. Your Honor, under the New Jersey revised statute 42-C-68, a member may maintain a derivative action to enforce the right of the limited liability company. So as our client is also a member of the Gelab Cosmetics LLC, our client does also have the right to maintain this action. So you're essentially saying that this is what then a derivative action under a corporate law theory of unfaithful acts toward the business association? Your Honor, let me correct my prior statement. My understanding and my position is that even if the outlaw, one of the defendants, even if in the unlikely event it's going to be fined at 80% owner, but this case whoever retained us to file this lawsuit can also maintain this lawsuit. When you say this lawsuit, you're talking about the federal court lawsuit. Yes, Your Honor. In your view, is the lawsuit that was filed in the federal district court a derivative claim brought under the federal trade secret statute? Or what is it? It's a direct action. Okay, it's a direct action, right? So if it's a direct action, don't you run into the question that Judge St. Eve is asking? In other words, those that control Gelab can make a controlling decision, can they not, on whether they want to pursue a direct action or whether they don't? But that is right, Your Honor. They can make that decision, but the other members can still bring a derivative action. But then it's not a direct action anymore. I think you're not seeing the difference. That would be in some other lawsuit. Maybe it's in New Jersey or somewhere else. But we are here, and there is a lawsuit. But it's a direct lawsuit. I think it's a direct lawsuit, and I think even you would agree, if the court in New Jersey determines that the defendants own 80% of Gelab, then that direct action can no longer stand. Maybe there's a derivative, but the direct action can no longer stand. Do you agree with that? It is possible, Your Honor. Okay, that's the concern. Well, and that's, I think, why Judge Wood started where she did. So if the outcome in the New Jersey case is that, I know that's not your wish, but let's suppose, for discussion purposes, that that's what happens. Wouldn't those that are determined to be the 80% direct owner, they would direct dismissal, would they not, of the federal, presumably, the federal court trade secret litigation? And the reason is because they could issue a controlling directive. And then if there were some later derivative litigation, you know, yet to be determined, you know, we don't need to get into things that are too hypothetical. And I want to just focus you, since time is slipping away. The district court here actually took a fairly modest approach to this. He looks at the Colorado River criteria. He asks, how do we, in the interest of wise judicial administration and the other factors that you're supposed to think of with Colorado River, he asks, how am I supposed to treat this parallel New Jersey litigation? And he concludes that these factors, none of which is dispositive, there could be other factors, like all these multi-factor tests. He concludes that the wise approach is not to dismiss, is to stay the federal action. So if the New Jersey result is the one that you're hoping for, this case hasn't died. This case is on ice right now, and it could come back. I think we're looking at this as an abuse of discretion kind of review, and it's hard for me to see what discretion is being abused here. Thank you, Your Honor, for bringing this up. From my view, this court has previously held the record. This court has required that the record in the district court demonstrate that the decision whether to abstain or proceed with the case, weighing, carefully weighing the factors. Right, and you're talking about the Juan case, which was quite different from this. The district judge gives a pretty good explanation here for why he's thinking about that. We don't have a page limit on what the district judges are supposed to do. And, again, not every factor is probably ever going to point in the same direction. But he sees a great heavy balance in favor of this stay, not a dismissal. Your Honor, from my understanding, this court, combined with the other holdings from this court, the district court should have considered all 10 factors. But in this case, the district court did not consider all 10 factors. But there's no reason to believe that anything he didn't discuss in great detail would have leaned in the other direction. I think he does discuss most of the factors. It just depends whether you are using the exact same vocabulary as Colorado River or maybe synonyms. I understand, Your Honor. I would like to reserve my time for rebuttal. Okay, very well. You can do so. Thank you, Your Honor. Mr. Bruce, good morning. Good morning. I'm William Bruce, counsel for Appellees, whom I will refer to as Zuhai. I want to make three points regarding why the case is parallel and the district court did not abuse its discretion. Before I do that, the cases we primarily rely on is the 2014 Freed opinion and the 2021 Loughran opinion. They discuss the issue that's in this case regarding defensive, non-exclusive or non-mutual defensive collateral estoppel being sufficient to find the cases are parallel. As the court recognized, the threshold issue is being directly and actively decided in the New Jersey State Court, and that is the controlling ownership of GLAM. Is it your understanding also that that court has kind of stalled on discovery or has chosen not to move forward with discovery yet? No, Your Honor. That's not my understanding. There has been some discovery, and there's been a lot of discovery disputes. The original date was August 2022. At the time of the stay, discovery, all discovery was scheduled to end in April 2023. It's been extended to December 29th. I understand that there are pending motions to compel. One side hadn't produced enough documents to allow for depositions. So the fact that there has been so much discovery dispute, I think, also weighs in favor of abstention because you get the risk of piecemeal litigation through that. Correct me if I'm wrong here, and Ms. Jucan as well. Well, it seems to me there has to have been some evidentiary dimension to the proceedings in New Jersey because the state judge in New Jersey put the entity, GLAM, under like a monitorship, basically. A receiver. Yeah, like a receiver or monitorship, right? And the district court made the finding, too, I believe, that discovery was near completion. I felt that, too. Yeah, it was scheduled to be near completion, and in addition to that it has decided partial summary judgment from one of the defendants in that case, an owner of GLAM who is in this case, and it has appointed the special temporary fiscal agent. Right, and is it fair to say it seemed very odd that there's no evidence accompanying those orders? They certainly didn't do it sua sponte, the New Jersey court. No, there was a consent. A consent from both parties consented to appointing a special fiscal agent to monitor and audit GLAM. Okay, all right. And so I think in addition to the cases being parallel, as you've discussed, if the controlling ownership is decided in favor of our client, Suhai, we would voluntarily dismiss this case. In addition to that, they wouldn't have liability under the federal DTSA Act for misappropriating their trade secrets, and that would knock out the case from federal court and lose subject matter jurisdiction. So is there some remaining claim? Does New Jersey recognize claims by minority owners for looting the company or, you know, other sorts of problems? Yes, Judge. I think we have derivative action for breach of fiduciary duty, breach of contract. We have state law claim in this case because these offenders are all foreign. You can't bring a derivative federal action, though, for trade secrets. That doesn't exist. Exactly, Your Honor, and so that's why a finding on a two-independent basis for parallel cases. One, if Suhai is a controlling owner, they would dismiss the case, the direct action. Number two, they wouldn't be liable under the federal DTSA claim, and so you wouldn't have federal jurisdiction. Regarding the abuse of discretion analysis, the court succinctly but reasonably addressed almost all of the factors and did them together regarding the progress of the case, the state case. The state case was filed 20 months before this case and the risk of piecemeal litigation because of that. I grouped them together in paragraphs, but this litigation in federal court is the result of the litigation choices of Mr. Chen, who the court found was behind this lawsuit, and he presumably would be bringing the derivative claim if there is one. He decided to have the ownership issue decided by the New Jersey State Court, and despite that issue being undecided, he still caused GLAB to file this federal lawsuit in Illinois. That's totally unconnected. What happens if the New Jersey court finds that he is the primary owner? He can resume the… The stay will be lifted. Yes, the stay will be lifted. And that's the prudence of the observation that Judge Wood remarked upon, right, that the district court here didn't dismiss. It stayed. Yes, Your Honor. It stayed because you have a threshold issue of who owns the LLC, who is the controlling owner, and an owner is not going to steal a trade secret from themselves. It's an incoherent theory. So let's let that get sorted out in state court, and we'll figure out whether we have to lift the bookmark or not in federal court. Yes, Your Honor. That kind of flexibility seems inherent in the underpinnings of our case, especially the most recent opinion, Loughran. Yes, Your Honor. I mean… Yes, I agree with that. And the last point I would make is I think, you know, in addition to the court's reasoning on why the case is a risk piecemeal litigation, I also agree with the reasoning on why the New Jersey court is better positioned to decide this threshold issue given the progress of the case, the summary judgment, special fiscal agent, discovery disputes. And so if the court doesn't have any more questions, I'll yield the rest of my time. Okay. Mr. Bruce, thanks very much. Thank you. I appreciate it. Ms. Ju, you're welcome to advance a rebuttal argument here. Thank you, Your Honor. And, yeah, because appellant's argument is that we do believe because the lower court should not abstain from adjudicating the real issue at hand because the protection of the trade secret and because the necessity of preserving the evidence of the trade secret misappropriation. And that's why we filed this appeal, and we would like this court to direct the district court to resume this case. Okay. Thank you, Your Honor. Thank you very much. Ms. Ju, to you, Mr. Bruce, to you and your colleague, we'll take the appeal under advisement.